UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff | |
| V | |
| **TEDDIA CALDWELL,** | |
| Defendant | CAUSE NO:   2:18-CR-21 |

**DEFENDANT'S MOTION FOR**
**PRE-AUTHORIZATION DISCOVERY**

COMES NOW the Defendant, Teddia Caldwell, by counsel John Maksimovich and Arlington Foley, and respectfully represents the following to the Court:

**I.   Introduction**

Defendant Teddia Caldwell is charged in fifteen counts of the Government's nineteen count indictment with Conspiracy to Distribute and Possess with Intent to Distribute 280 Grams or More of Cocaine Base and 100 Grams or More of Heroin in violation of *Title 21, United States Code §841(a) and §846*, Nine counts of Distributing Cocaine Base and/or Heroin, One count of Felon in Possession of a Firearm in violation of *Title 18, United States Code §922(g)*, Two counts of Possessing a Firearm in Furtherance of a Drug Trafficking Crime and Two counts of Knowingly and Intentionally Killing a Person While Engaged in a Narcotics Conspiracy in violation of *Title 21, United States Code §848(e)(1)(A)*. More specifically, in Count Eighteen the government alleges Caldwell and Devonte Hodge knowingly and intentionally killed Akeem Oliver and in Count Nineteen the government alleges Caldwell, Devontae Martin and Taquan Clarke knowingly and intentionally killed Kevin Hood.  Caldwell, Martin, Clarke, and Hodge face the

possibility of capital punishment.  Caldwell's counsel is of the opinion that this motion applies to Martin, Clarke, and Hodge, as well as Caldwell, should they wish to join Caldwell in this motion.

## II.     General Nature of "Pre-Authorization" Discovery

The Indictment carries a potential death sentence for Caldwell and his co-defendants Martin, Clarke, and Hodge, and the case is currently in the "pre-authorization" stage, i.e., prior to the Attorney General's decision whether to seek execution.  Caldwell and each of his co-defendants are literally fighting for their lives and have a legitimate and bona fide desire to make a meaningful and persuasive presentation to the United States Attorney and/or the Department of Justice Capital Review Committee.  Their case is currently set for Death Penalty Review in front of the Department of Justice Capital Review Committee in Washington, D.C. on March 11, 2019, at 1:00 PM.  Accordingly, they request certain relevant discovery in order to do so.

In general terms, Caldwell seeks victim information which is mitigating, additional Brady, Giglio and favorable (mitigating) evidence, Rule 16 materials, and Jencks Material.

The information sought herein is requested after careful analysis of the discovery provided to date and preliminary defense investigation. None of the items are mere "fishing expeditions" or "boilerplate" requests, but rather are supported by specific, good faith reasons to believe that the materials and information exist.

Furthermore -and importantly -a significant portion of the materials and information requested may well be exculpatory and/or favorable in nature, so that the present debate is not merely one of entitlement, but also one of timing. As will be shown infra, substantial policy considerations weigh in favor of prompt disclosure. All doubts as to our entitlement should be resolved in Caldwell's favor. See, e.g., *United States v. Ramirez*, 608 F.2d 1261 (9th Cir. 1979)("reasonable doubts should be resolved in favor of disclosure"), *United States v. Johnson*, 840 F.Supp. 634 (E.D.Wis. 1993)("All doubts should be resolved in favor of disclosure. A

prosecutor will never get in dutch for disclosing too much. When everything is not disclosed, a prosecutor is asking for trouble"), *United States v. McVeigh*, 954 F.Supp. 1454 (D.Colo. 1997)("Doubts must be resolved in favor of disclosure"), *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003)("the government should err on the side of disclosure when interpreting its Brady/Giglio obligations given the need for the utmost reliability in capital proceedings"), *Kyles v. Whitley*, 514 U.S. 419, 439, 115 S.Ct. 1555 ("… a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence.").

**Mitigation investigation and pre-authorization discovery**

The American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003)(hereinafter "ABA Guidelines") make it abundantly clear that "[i]nvestigation and planning for both phases of the case (Guilt/Innocence Phase and Sentencing/Penalty Phase) must begin immediately upon counsel's entry into the case, even before the prosecution has affirmatively indicated that it will seek the death penalty".  ABA Guidelines 1.1, Commentary.  See also ABA Guidelines, Introduction ("These Guidelines … apply in any circumstance in which a detainee of the government may face a possible death sentence, regardless of whether … the prosecution has affirmatively indicated that the death penalty will be sought. The case remains subject to these Guidelines until the imposition of the death penalty is no longer a legal possibility").  See also, *In re Sterling Suarez*, 306 F.3d 1170, 1171, 2002 U.S. App. LEXIS 21072, *1-2, 191 A.L.R. Fed. 643 (1st Cir. P.R. 2002)(holding that statute requiring "prompt" appointment of learned counsel means "promptly after indictment, not only after the Attorney General has made a determination to seek the death penalty").

As the First Circuit has recognized, "the submission to the Attorney General is a comparatively informal one and in those cases where the opposition succeeds in persuading the Attorney General not to seek the death penalty, a substantial additional expenditure on the trial and sentencing phase of a capital case is likely to be avoided". *Sterling-Suarez,* supra, at 1174. Much of the discovery requested

-3-

herein is highly relevant to our ability to make meaningful arguments to the Attorney General against the death penalty, and is therefore far from"premature".

As well, since mitigation is by definition "favorable" as to punishment, it is Brady material in the context of a capital case. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-1197, 10 L. Ed. 2d 215, 218 (U.S. 1963)("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment …"). See also, *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005) ("Under *Brady*, the government must disclose favorable evidence that is material to either the defendant's guilt or possible sentence"), *Ward v. Hall*, 592 F.3d 1144, 1182 (11th Cir. 2010)("Brady counsels that once a defendant requests the discovery of any favorable evidence material to either guilt or sentence, the prosecution's suppression of such evidence, whether in good or bad faith, violates due process")(all emphasis added).

It is also important to remember that "the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations …". *Cone v. Bell*, 556 U.S. 449, at 470 n. 15, 129 S. Ct. 1769 (2009).  In support of this proposition, the Supreme Court cited to the ABA Model Rules of Professional Conduct 3.8(d) (2008):

> The prosecutor in a criminal case shall "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal allunprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal")(emphasis added).

*Cone v. Bell*, 556 U.S. 449, at 470 n. 15, 129 S.Ct. 1769 (2009)

**Expanded discovery for pre-authorization purposes**

Defendant's request for pre-authorization discovery is neither novel nor lacking in substantial precedent.  District Courts have long recognized the crucial

importance of such information at this stage of the process. District Courts in the Seventh Circuit, and indeed throughout the nation have "expansively defined defendants['] right to discovery so that the defense may argue against the death penalty certification before the Attorney General".  In *United States v. Delatorre*, 438 F.Supp.2d 892, 903 (N.D.Ill.2006), for example, the court ordered pre-authorization discovery, requiring the government to "produce mitigating and aggravating factors and other Brady material … so that it may be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice".

Likewise, in *United States v. Diaz*, 2005 WL 1575191 (N.D.Cal.,2005), the Court granted extensive pre-authorization discovery, expressing the view that "[t]he exigencies of capital litigation compel, as a practical matter, in order to ensure the fair and orderly disposition of the case, prompt disclosure of all information which will affect the choice of penalty".

In *United States v. Jackson*, 02 CR. 756 (LMM), 2003 WL 22023972 (S.D.N.Y. Aug. 27, 2003), the District Court cited *Rosado-Rosario*, supra, and held that "penalty determination relevant material within the scope of *Brady v. Maryland* and its progeny, must be produced in time to be used in defense counsels' argumentation against pursuit of the death penalty to both the United States Attorney and the Department of Justice" (citation omitted).

In *United States v. Smallwood*, 5:08-CR-00038-R, 2009 WL 1734139 (W.D. Ky. June 18, 2009) the District Court held that "in the interest of justice … the United States shall disclose Brady exculpatory evidence to the Defendant in time for effective use in her arguments to the United States Attorney and the Capital Review Committee".  See also, *United States v. Ablett*, 3:09-cr-00749-RS (ND CA December 29, 2010)(Magistrate Judge proclaimed that "[t]he pre-authorization phase of a potential capital case is analogous to the penalty phase of a trial, and defense counsel must have access to all relevant discovery, in order to provide effective assistance to Defendant").

In *United States v. Ortiz*, 2012 WL 5379512 (N.D.Cal.), 5 (N.D.Cal., 2012), the District Court stated that it "finds persuasive those cases that hold that a district court may order accelerated discovery of Brady information -when appropriate based on the facts of the specific case -in a capital case to aid in the defense's presentation of its case before the capital case committee".

The Court further noted that:

> The court is not requiring identification of witnesses or privileged information, only preauthorization discovery requiring the government to produce information about mitigating and aggravating factors and other Brady materials so that they may be used in defense counsel's arguments against the pursuit of the death penalty to the United States Attorney's Office and the Department of Justice.(emphasis added)

### III. Discovery Requested

As noted above, mitigation is crucial in pre-authorization, both to establish positive mitigating factors which "would suggest, in fairness, that death is not the appropriate punishment", supra, and also to rebut (or mitigate) the aggravating factors upon which the Government might rely in seeking death. Further, as the District Court recognized in Diaz, supra, "[t]he relative weakness and contradictions in the government[']s case will be significant to the defendants in making their presentations to the Department of Justice with respect to the Death Penalty". In *United States v. Jackson*, supra, the District Court similarly noted that "[d]uring the [authorization] process, prosecutors are encouraged and required to evaluate carefully the strengths as well as the weaknesses of their cases …", as well as "the factors in favor of and opposed to the imposition of the death penalty".See also, *United States Attorneys' Manual*, §9-10.130(D) (listing "the strength and nature of the evidence" as one of the "Standards for Determination" whether the death penalty will be sought).

Accordingly, the discovery requests set forth below generally fall into one or more of the following broad categories:

- Information and evidence that will assist the defense in understanding and developing exculpatory or favorable evidence as to potential sentencing issues, including but not limited to mitigating factors,
- Information and evidence that will assist the defense in understanding and developing exculpatory or favorable evidence as to guilt issues, and
- Information and evidence that will assist the defense in understanding (and mitigating) the aggravating factors, including "strength and nature of the evidence", and discovery concerning the surrounding facts and circumstances of the acts alleged against any death-eligible defendant.

### A.   Victim information

#### 1.   Criminal history information

Caldwell seeks criminal history and background information known to the Government concerning the victims: Akheem Oliver and Kevin Hood, along with eyewitnesses to the shootings, and any other Government witnesses. The government employed informants in putting its case together. Also, Caldwell seeks criminal history and background information known to the Government concerning its informant Russell Peoples and any other informants the Government used in putting its case together. The *United States Attorney's Manual*, section 9-10.080, lists "the background and criminal record of the victim" as one of the required sections of the "Prosecution memorandum" to be submitted to DOJ pursuant to the death penalty protocol. Any such information concerning the victims is "mitigating" as to sentencing, and therefore should be disclosed.

#### 2.   Information concerning victims' involvement with drugs and/or violence

Caldwell seeks, in addition to the "background and criminal record" of each alleged victim, all information known to the Government concerning "[w]hether the victim engaged in criminal activity that was a relevant circumstance of the offense", as follows:

-7-

- Whether the victim was a member of, or associated with, a drug organization or other similar entity or group of individuals (hereinafter, simply "drug organization"),
- The nature and extent of the criminal activities of the drug organization, including any name, nickname, title or other identifying reference, geographical area of operations, etc., and each victim's role in the organization or group,
- All information in the Government's possession or control which suggests that the drug organization routinely engaged in acts of violence, and its reputation in the community for same, more specifically, whether the drug organization would:
    - use force, violence, and intimidation in order to gain and maintain control of their drug points and in order to intimidate rival drug trafficking organizations and/or expand their drug trafficking activities.
    - intimidate residents in order to control the locations they used for the drug distribution business.
    - routinely possess, carry, brandish, use and discharge firearms to protect themselves, their drug trafficking organization, maintain order and control of their drug points, intimidate and retaliate against other drug trafficking organizations, and to expand their drug trafficking activities.
    - commit murder in order to maintain order and control of the drug trafficking operations.
    - use vehicles under other persons' names to commit acts in furtherance of their drug trafficking activities, including shootings against rivals

**B.     Additional Brady, Giglio and favorable (mitigating) evidence**

Apart from the "victim" information discussed above, Caldwell requests "any and all information and material in the Government's 'possession, custody, or control' which might be favorable, or mitigating, on the issue of whether the death penalty should be sought or imposed". Caldwell requests such disclosure at this time so that he can properly investigate, develop and present such evidence and/or arguments to the Department of Justice prior to the Attorney General's authorization decision". This is precisely the purpose and justification of "pre-authorization discovery", as recognized in the cases discussed in the section (above) entitled "Expanded discovery for pre-authorization purposes". Although we gave several examples ("relative culpability" of certain individuals, "role in offense", "nature and strength of the Government's case", and similar considerations), we believe that it is appropriate and proper to require the Government to disclose "any and all information and material in the Government's 'possession, custody, or control' which might be favorable, or mitigating, on the issue of whether the death penalty should be sought or imposed". See, e.g., *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995)(recognizing that "ABA Standards for Criminal Justice … call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate"), and *Douglas v. Workman*, 560 F.3d 1156 (10thCir. 2009)("The government's obligation to disclose exculpatory evidence does not turn on an accused's request").

**C.     Rule 16 material(s)**

Caldwell seeks to inspect all physical evidence in the case, and requests a"formal listing of each such item in the government's possession, custody and control". Caldwell asserts this is necessary in order to coordinate and facilitate the orderly, efficient and meaningful inspection of all physical evidence by four (4)separate sets of defense counsel, with likely participation by FBI Agents and/or other members of the prosecution team. Caldwell, therefore, requests the "formal listing" of all physical evidence.

### D. Request for schedule

Caldwell requests the Court set a schedule requiring production of the requested items and categories of items within thirty (30) days, to enable the defense to make meaningful use of the information in preparing their mitigation submissions. There truly seems to be little reason for the government to withhold disclosure during the critical pre-authorization period. Additional reports such as scientific and or forensic tests and the results thereof, such as DNA testing, ballistic and / or bullet match testing, etc should all be produced along with " written summaries" of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial', including a description of the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications" along with any 404(b) material or Jencks material the government intends to use at trial. Caldwell requests that each of these items be produced by the government within 30 days, so that he may prepare a meaningful mitigation submission in a timely fashion for the March 11, 2019 Capital Review Conference.

Likewise, Caldwell needs the government to provide notes of experts and others involved in scientific and/or forensic testing immediately. To make Caldwell wait until "the schedule for Jencks material, provided that those witnesses testify", is prejudicial, since Caldwell's experts will require those notes well in advance of trial, in order to conduct the required meaningful testing and analysis of their own. See generally, *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003), 10.7, Commentary* ("Counsel should make a prompt request to the relevant government agencies for any physical evidence or expert reports relevant to the offense or sentencing, as well as the underlying materials. With the assistance of appropriate experts, counsel should then aggressively re-examine all of the government's forensic evidence, and conduct appropriate analyses of all other available forensic evidence").

### E.     Identifications

The discovery provided to date contains insufficient information to investigate, research, draft and litigate meaningful Motions to Suppress identifications. Further, Caldwell seeks all information concerning any purported witnesses who were shown a photograph of any Defendant (whether a single photo or part of multiple photos) and did not identify him. This is classic favorable evidence, and should be provided.

### V.     CONCLUSION

The nature of the charges and the Government's proof, the potential consequences, and all other facts and circumstances that exist herein combine to create a scenario where the interests of justice are best served by full and complete disclosure of all requested materials at this stage of the proceedings. This Honorable Court has both the authority and the discretion to Order the requested disclosures. When human life is at stake, this is an abundantly reasonable request.

**WHEREFORE**, Caldwell respectfully requests that this Honorable Court direct the Government to provide the discovery materials identified herein, forthwith.

Respectfully submitted:

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          **Plaintiff**<br><br>V<br><br>**TEDDIA CALDWELL,**<br><br>          **Defendant** | <br><br><br><br><br><br><br><br>**CAUSE NO:   2:18-CR-21** |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2018, I electronically filed:

*DEFENDANT'S MOTION FOR PRE-AUTHORIZATION DISCOVERY*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

|  |  |
|---|---|
| David J. Nozick | Thomas R. Mahoney |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

          N/A

                                        By:   /s/ *John Maksimovich*
                                              John Maksimovich /#9950-45
                                              Attorney For Defendant
                                              1946 North Main Street
                                              Crown Point, IN 46307
                                              PH: 219.663.1900
                                              FX: 219.663.1908
                                              E-Mail: criminallaw@johnmaksimovich.com