UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff<br><br>V<br><br>TEDDIA CALDWELL,<br><br>                    Defendant | <br><br><br><br><br><br><br><br>CAUSE NO:   2:18-CR-21 |

DEFENDANTS MEMORANDUM IN
SUPPORT OF DEFENDANTS DISCOVERY
REQUEST FOR MITIGATION PURPOSES

COMES NOW the Defendant, Teddia Caldwell, by counsel John Maksimovich and Arlington Foley, and files his Memorandum in Support of Defendant's Discovery Request for Mitigation Purposes in order to provide the Court with case law authority related to the Defendant's previously filed Discovery Request for Mitigation Purposes (hereinafter Defendants Discovery Motion), and respectfully represents the following to the Court:

**I. PRECEDENTIAL AUTHORITY**

To counsel's knowledge there is no Court of Appeals authority, including the Seventh Circuit, regarding pre-authorization discovery, nor any specific Supreme Court case law directly on issue. A number of District Courts, however, have confronted the issue and written reported decisions, as well as some unreported decisions, ordering pre-authorization discovery. These District Courts have relied upon the significance of the authorization process in the federal death penalty process and the well-established Supreme Court law emphasizing the distinct difference between death penalty cases and even serious other felony cases, and as

a consequence the need for "a heightened standard of reliability in capital cases." See, e.g., *Gardner v. Florida*, 430 U.S. 349, 357-358 (1977)"(First, five members of the Court have recognized that death is a different kind of punishment from any other which may be imposed in this country."); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)("Death, in its finality, differs more from life imprisonment than a 100 year prison term from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."); *Ford v. Wainwright*, 477 U.S. 399 (1989)("In capital proceedings generally, this Court has demanded that fact-finding procedures aspire to a heightened standard of reliability.").

      The cases also rely upon the due process duty of the Government to provide the defense with arguably favorable information relating either to guilt/innocence or sentencing. *Brady v. Maryland*, 373 U.S. 83 (1963). After all, Brady itself involved the failure of the prosecution to disclose information (the suppressed confession of a co-defendant) that would have been favorable to Mr. Brady at sentencing, because it would have reduced the defendant's offense below first degree murder.

      The District Court cases also emphasize the fact that *Brady* material must be provided in a timely fashion so that it can be effectively used by the defense. E.g., *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007). In the context of the federal death penalty this means that the information needs to be provided at a time where it can be used during the authorization stage, the proceeding where the fateful decision as to whether or not a case should be pursued as a death penalty case is made.

      In addition, under the principles of due process, discovery is a two-way street and it is reasonable for the government to provide information to assist defense counsel in understanding the nature of the case, particularly when counsel is

expected to disclose during the authorization process significant information about the defense case. See *Wardius v. Oregon*, 412 U.S. 470, 475 n. 9 (1973).

From counsel's research a number of District Courts which have confronted the issue in reported or written decisions have ordered pre-authorization discovery, much like that requested by the defense here. See *United States v. Delatorre*, 438 F.Supp.2d 892, 900-901 (N.D.Ill. 2011) *Delatorre* referenced a number of cases where "courts have ordered discovery produced subject to immediate disclosure to be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice." The Court noted that "the exigencies of capital litigation compel, as a practical matter, in order to ensure the fair and orderly disposition of the case, prompt disclosure of all of this information which will affect the choice of penalty," quoting *United States v. Diaz*, 2005 WL 1575191 (N.D. Cal. June 30, 2005).

Other cases likewise recognize the necessity for pre-authorization discovery in death penalty cases. See *United States v. Stone*, 2013 WL 4541513 (E.D.Cal. August 27, 2013) (In authorizing pre-authorization discovery the Court notes that "[b]ecause of its severity and finality, capital punishment is qualitatively different from any other form of punishment," and although "Brady does not necessarily require that the prosecution turn over exculpatory material before trial; however, disclosure must be made at a time when it would be of value to the accused," which in the situation of a federal death penalty case means preauthorization.); *United States v. Ortiz*, 2012 WL 5379512 (N.D.Cal., October 31, 2012) ("a district court may order accelerated discovery of Brady information – when appropriate based on the facts of specific case – in a capital case to aid in the defense's presentation of its case before the capital case committee"); *United States v. Karake*, 281 F.Supp.2d 302, 306-307 (D.C. 2003); *United States v. Jackson*, 2003 WL 22023972 (S.D.N.Y., August 27, 2002) ("In these circumstances, penalty determination relevant material

within the scope of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, must be produced in time to be used in defense counsels' argumentation against pursuit of the death penalty to both the United States Attorney and the Department of Justice."); *United States v. Perez*, 222 F.Supp.2d 164, 166 (D.Conn. 2002) ("As set out below, the Court concludes that in as much as this case is currently a capital case because *Gonzalez* is presently subject to a possible sentence of death, materials relating to aggravating and mitigating circumstances are within the scope of the Governmenti|s obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." As a consequence, these "materials are thus subject to immediate disclosure under the District of Connecticut's Standing Order on Pretrial Discovery, which is issued pursuant to the Court's inherent authority to manage its docket and supervise the orderly disposition of criminal matters."); *United States v. Gonzales*, et al. (D. NM CR No. 1 :95-CR-538 (MV) (court ordered pre-authorization discovery out of fairness and administration of justice - concern with docket control); *United States v. Gray, et al.* (S.D. AL CR No. 01-00007-CB) (April 5, 2001)(Court ordered "production of all underlying facts, ... that were relevant and material to the certification issues pending before the Attorney General"); *United States v. Feliciano*, 998 F. Supp. 166 (D. Conn. 1998) (preauthorization discovery permitted based upon the District's Standing Order; immediate disclosure of non-protected witnesses ordered; ordering evidence disclosed, if any, indicating the victim "consented" to the criminal conduct, other than by virtue of membership in Los So lidos gang); *United States v. Rosado-Rosario, et al.* (D. PR CR No. 97-049 (JAF))(August 1, 1997) (court "expansively defined] a capital defendant's right to discovery;" district court ordered that unredacted statements and transcripts of witness interviews be provided to the defense during authorization process); *United States v. Gomez-Olmeda*, 296 F.Supp.2d 71, 87-88 (D.P.R. 2003) (The Court

-4-

ordered pre-authorization discovery and the Government failed to comply. The Court concluded that had "the government timely provided such discovery as required, Defense Counsel would have been able to use the sought materials in preparation for and during the death penalty certification meeting." But because of the failure to provide meaningful pre-authorization discovery, "Defense Counsels' representation before the Review Committee on Capital Cases was, therefore, severely compromised, putting his client at a grave disadvantage."); *United States v. Ablett*, Case No. CR09-749RS(JL)(N.D.Cal. 2010), Discovery Order, ("The Court finds that the facts in this case support the relevance of discovery related to any statements by witnesses which may contain or reflect incriminating or exculpatory statements by Defendant, as well as other *Brady, Giglio* and *Kyles* discovery which would make it possible for counsel to provide effective assistance to Defendant, as required by the *Sixth Amendment*, in the pre-authorization phase. The Court also finds persuasive authority that, in a potential capital case, even in the absence of a trial date, the Government must provide whatever it is obliged to produce under *Brady, Giglio* and *Kyles*, regardless of its interpretation of the limits on discovery under *Rule 16, Federal Rules of Criminal Procedure*, and the *Jencks Act*. The pre-authorization phase of a potential capital case is analogous to the penalty phase of a trial, and defense counsel must have access to all relevant discovery in order to provide effective assistance to Defendant.")

## II. SPECIFIC REQUESTS

The Defendant's Discovery Motion sets out the specific requests for preauthorization discovery and why this discovery is relevant to the factors that the United States Attorney, the Capital Review Committee, the Deputy Attorney General and ultimately the United States Attorney General should consider in determining whether this is one of the few cases that merits a death penalty prosecution. As explained in the Defendant's Motion, the role of defense counsel in

this process is not merely to provide the decision makers with mitigating evidence regarding such factors as the Defendant's family and upbringing, mental health issues, etc., to which the Government typically would not have access. Instead, the process is also designed to provide the decision makers with the defense perspective regarding the "strength and nature of the evidence" and whether it is "substantial, admissible and reliable," the "relative roles in the offense of defendants in jointly undertaken criminal activity," and the characteristics and circumstances of the victim, including "[w]hether the victim engaged in criminal activity that was a relevant circumstance in the offense." USAM §9-10.140(c) & (D)(1)(2)(5).

In providing for a defense submission to the decision makers, including an in-person presentation to the Capital Review Committee, the Death Penalty Protocols envision a type of adversary process whereby the defense is given the opportunity to present a defense perspective with regard to the factors and circumstances to be considered by the decision makers, keeping in mind that under the Protocols the death penalty should not be authorized unless the aggravating factors "sufficiently outweigh the mitigating factors to justify a sentence of death" and that any "ambiguity as to the presence or strength of aggravating or mitigating factors" should be resolved "in favor of the defendant." USAM §9-10.104(c).

Many of the requests for discovery made in the Defendant's Discovery Motion seeks information needed by counsel to challenge effectively the admissibility and reliability of the Government's evidence both "in preparation for and during the death penalty certification meeting" so that counsel can meaningfully present the defense case to the decision makers and not be "severely compromised, putting his client at a grave disadvantage." *United States v. Gomez-Olmeda*, 296 F.Supp.2d at 89. Indeed, here, in that the Indictment does not set out what statutory or non-statutory factors the Government intends to rely upon

in deciding whether this case should be prosecuted as a death penalty case, counsel can only speculate as to what they might be. As the Court observed in Gomez-Olmeda, as a consequence "the prosecution effectively put Defendant to the task of having to guess which aggravating factors might best support his own sentence of death." Id. at 88.

Information regarding witness statements, including the statements made by each of the co-defendants, is, of course, not only important regarding the strength, reliability and admissibility of the Government's evidence as to each Defendant, but also is essential for counsel to make an effective presentation concerning the "relative roles in the offense of defendants in jointly undertaking criminal activity." USAM §9-10.140(D)(2). Counsel desperately needs all of this information in order to be effective in making their presentation to the decision makers. See *United States v. Karake*, 281 F.Supp.2d at 308 ("Thus, the government is obligated to disclose any information that reflects that defendants are equally or less culpable than other coconspirators, and the assertion that the government investigation is ongoing is without more insufficient to overcome the need for disclosure.").

Another important area where the defense needs information in order to be effective during the authorization process is information regarding the victims in this case. As noted in the Motion, just as victim character and characteristics can be used by the Government as an aggravator in favor of death, *18 U.S.C. §3593(a)*, so is this factor relevant as a potential mitigator. The memorandum submitted to the Department of Justice is required to include the "[b]ackground and criminal record of the victim," USAM §9-10.080(A)(6), and one factor to be considered in the authorization process is "[w]hether the victim engaged in criminal activity that was a relevant circumstance of the offense." USAM §9-10.140(D)(5). Obviously, the victims' circumstances are a critical factor to weigh in the process of determining whether this case merits a death penalty prosecution.

Through discovery previously provided by the government, Caldwell's counsel is informed that Akeem Oliver was a snitch concerning certain criminal activity and drug dealing. However, Caldwell has not been provided with any information concerning Oliver or Hood's drug activities or the seriousness of them. See *United States v. Ortiz*, 2012 WL 5379512 (the Court grants pre-authorization discovery of "victim information (participation in criminal activity, acts that brought about their death), criminal history, gang task force, and other background information of the victims."); *United States v. Diaz*, 2005 WL 1575191 (the Court orders disclosure of "any evidence or information in the Government's custody or control indicating that the victims of any charged murder were engaged in criminal activity at or near the time of the charged crimes.").

This is a critical factor in determining whether this case is one where the aggravating factors substantially outweigh the mitigating factors, while resolving any ambiguity in favor of the Defendants. The information about Oliver's cooperation which would be particularly relevant would be, for example, whether Oliver's "cooperation" involved others not indicted who had a more or equally compelling motive to do him harm. See *United States v. Diaz*, at 2005 WL 1575191 (the Court orders disclosure of "evidence or information in the Government's control that persons other than the charged defendants may have had a motive to kill any victim of a murder currently charged in the Indictment.").

### III. CONCLUSION

The Defendant's Discovery Motion sets out the items that the defense needs to be effective in representing their clients during the authorization process by making a meaningful submission to the decision makers as to why this case is not one of the few cases that justifies a death penalty prosecution. In this Memorandum Caldwell has attempted to provide the Court with District Court authority, which while not binding is persuasive precedent supporting the Defendant's specific

discovery requests. Should the Government oppose Caldwell's requests, counsel for Caldwell requests that the Court schedule a hearing in order to thresh out any differences with the Caldwell regarding the requests.

**Respectfully submitted:**

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff<br><br>V<br><br>TEDDIA CALDWELL,<br><br>                  Defendant | <br><br><br><br><br><br><br><br>CAUSE NO:   2:18-CR-21 |

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2018, I electronically filed:

*Defendants Memorandum in Support of Defendants
Discovery Request for Mitigation Purposes*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| David J. Nozick | Thomas R. Mahoney |
|---|---|
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

      N/A

By:   /s/ *John Maksimovich*
John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-10-